IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | | |
|---|---|---|
| WILLIAM TAYLOR | * | |
| | * | |
| Plaintiff | * | |
| | * | NO: 4:08CV02833 SWW |
| V. | * | |
| | * | |
| ODOM'S TENNESSEE PRIDE | * | |
| SAUSAGE, INC. | * | |
| | * | |
| Defendant | * | |
| | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Taylor ("Taylor") brings this employment dispute against his former employer, Odom's Tennessee Pride Sausage, Inc. ("Odom's"). Before the Court is Odom's motion for summary judgment (docket entries #7, #8, #9), Taylor's response in opposition (docket entries #11, #12, #13), and Odom's reply (docket entry #14). After careful consideration, and for reasons that follow, summary judgment will be granted in Odom's favor on Taylor's claims under 42 U.S.C. § 1981 and the Family and Medical Leave Act ("FMLA"). Taylor's supplemental claims brought pursuant to state law will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**I. Background**

Taylor began working for Odom's on May 8, 2000 as a maintenance technician. On September 5, 2006, Taylor submitted leave request form to his supervisor, which reads in part as follows:

I request a leave of absence for the following reason: _____

1

☐ Personal illness or injury
☐ Illness or injury of a family member
☐ Military duty
☐ Jury duty
☐ Subpoenaed as a witness
✓ Other <u>Assist father with family tasks</u>[1]

Docket entry #8, Ex. #3 (Taylor Dep.), attached Ex. #2 (Request Form for Leave). Taylor acknowledges that he wrote the words "Assist father with family tasks" on the form, but he denies making the checkmark beside the word "Other." *See* docket entry #9, Ex. #3 (Taylor Dep.) at 39. The form indicates that the first four days of Taylor's absence from work, September 11 through 14, 2006, would be deducted from his accrued vacation time and the remainder of his time off, September 15 through October 2, 2006, would be taken as unpaid leave. *Id*.

In addition to the request for leave form, Taylor submitted the following writing to Jim McConnell ("McConnell"), Odom's plant manager:

> The reason I'm requesting time off is to take care of a very important family issue, my father who is retired and lives in Texarkana, TX asked if I could participate in tearing down an old shed the city has told him to condemn. I would also use this time to help him with some of the things he's been unable to do around the house. The time off would be greatly appreciated.

Docket entry #8, Ex. #3 (Taylor Dep.) at 40-42 and attached Ex. #3. McConnell granted Taylor's request for leave on September 7, 2006, and he noted on the request form: "William is one of our best mechanics!" *Id*. attached Ex. #3.

During Taylor's employment at Odom's, he also operated his own construction company.

---

[1] On the actual form, the checkmark beside the word "Other" appears inside a box. *See* docket entry #8, Ex. #3 (Taylor Dep.) attached Ex. #2.

On August 13, 2006, Taylor entered a construction contract with Steve Ganus, who also worked at Odom's. *See* docket entry #8, Ex. #3 (Taylor Dep.) attached Ex. #9 (Contract Agreement). The contract provides that for $31,000, Taylor would, among other things, construct an addition to Ganus's home. By affidavit, Ganus testifies that Taylor informed him that in order to complete the construction project, he planned to take a leave of absence from Odom's. Docket entry #8, Ex. #4 (Ganus Aff.), ¶5. Ganus further testifies that he and his wife agreed that Taylor could take a day or two to visit his father, who lived out of town, before he began working on their construction project "full time." *Id*.

Ganus testifies that Taylor told him that he had informed Odom's that he was taking leave to help his father, and "what the company didn't know wouldn't hurt them." *Id*. Ganus reports that Taylor and was present at Ganus's home from 10:00 a.m. to 4:00 p.m, each day from September 13, 2006 through September 22, 2006. *Id*., ¶6. According to Ganus, Taylor told him that he thought Odom's was going to fire him for lying about the reason for his absence from work. *Id*.

In early to mid-September 2006, Ganus informed Dan Lea, a maintenance supervisor at Odom's, that Taylor was working on a construction project for Ganus and was not in Texarkana helping his father. *Id*., ¶7; *see also* docket entry #8, Ex. #6 (Lea Aff.), ¶1. McConnell testifies that during the early part of Taylor's leave, Lea reported to him that Taylor was not in Texarkana helping his father, but was working at Ganus's home in Conway. Docket entry #8, Ex. #1 (McConnell Aff.) ¶ 6. McConnell states that he instructed Lea "to get the word out" that Taylor

needed to call him about the situation.² *Id*. Thereafter, Taylor contacted McConnell, who told Taylor "there was a problem in that it appeared he was not using his leave for the reason he had represented[,]" and "he needed to come in for a meeting." *Id*.

On September 13, 2006, Taylor met with Odom's human resource manager, Don Bryan, to discuss the reason for his personal leave. Bryan's notes from the meeting, signed by Taylor, state that Taylor acknowledged that in addition to helping his father in Texarkana, he was using his time off to take care of some responsibilities at home in Conway. Docket entry #8, Ex. #5. Bryan instructed Taylor to contact Odom's the following Monday (September 18, 2006) to discuss whether approval for Taylor's leave would continue.³ Bryan informed McConnell about his September 13, 2006 meeting with Taylor. *See* docket entry #8, Ex. #1 (McConnell Aff.), ¶7; Ex. #2 (Bryan Aff.), ¶5.

Bryan testifies that Taylor failed to contact Odom's on September 18, 2006. *See* docket entry #8, Ex. #5, ¶6. Additionally, McConnell testifies that he did not hear from Taylor on September 18, 2006 and that Bryan informed him that Taylor failed to contact him that day. *See* docket entry #8, Ex. #1, ¶9. But according to Taylor, he arrived at Odom's plant at 8:00 a.m. on September 18, 2006, and Bryan's receptionist told him that Bryan was in a meeting. Docket entry #8, Ex. #3, at 89-90. Taylor states that he did not enter the plant that morning, but he

---

²Taylor confirmed in his deposition that Odom employee Isaac Saab called him and told him he needed to contact McConnell. Taylor testified: "Well, he just told me I needed to call the office because they wanted to ask me some questions about my time off . . . ." Docket entry #8, Ex. #3 (Taylor Dep.) at 77.

³During the course of Taylor's meeting with Bryan, he told Bryan that unless he could have the time off, he might have to "come in and get his toolbox," in other words, quit his job. *See id.*, *see also* docket entry #8, Ex. #3 (Taylor Dep.), at 88.

4

spoke to Bryan's receptionist from the parking lot via cell phone. *Id*. Taylor further testifies that he returned to the plant at 12:30 p.m. and met with Bryan. *Id*. at 92-93. Taylor reports that Bryan didn't want to talk to him and told him that "his kind" didn't want to work. *Id*. at 93.

>On September 20, 2006, Bryan sent Taylor a letter terminating his employment, stating:
>
>Dear William:
>
>Please be advised by this letter that your employment and all benefits with Odom's Tennessee Pride Sausage, Inc. have been terminated effective 9-20-10.
>
>If you have any questions, please let me know. You also may contact our Vice-President of Human Resources, Mr. Lewis Moorer, at (615) 473-0408 regarding any questions you may have.
>
>Regards,
>
>Don Bryan
>HR Manager

Docket entry #8, Ex. #8.

Taylor commenced this lawsuit in state court on August 25, 2008, claiming that Odom's (1) terminated his employment based on his race; (2) subjected him to a racially hostile work environment; and (3) retaliated against him for taking leave pursuant to the FMLA. Taylor also brings a supplemental state law claims for breach of contract, wrongful termination, and intentional infliction of emotional distress.

## II. Summary Judgment Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a

prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

### III. Discussion

**A.      Wrongful Termination Based on Race**

Taylor contends that Odom's terminated his employment based on his race, and Odom's maintains that it fired Taylor because he misrepresented his reason for taking personal leave and he failed to contact Odom's on September 18, 2006 as Bryan instructed.

The Court has searched the record for information regarding Taylor's race and finds none, but will assume for the purpose of review that Taylor is a member of a protected class based on his race. The sole evidence offered in support of Taylor's race discrimination claims, both wrongful termination and hostile work environment, is Taylor's testimony that during a meeting with Bryan on September 18, 2006, Bryan told him that "your kind do not want to work here." *See* docket entry #8, Ex. #3, at 124.

Accepting Taylor's testimony as true for the purpose of summary judgment review, the Court does not find that Bryan's comment qualifies as direct evidence of race discrimination. Direct evidence of discrimination includes "'evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.* 444 F.3d 961, 966 (8th Cir. 2006)(quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993)). But stray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence of discrimination. *Id*.

In this case, it is undisputed that McConnell made the decision to terminate Taylor's employment, and Bryan's role consisted of communicating information to McConnell. By affidavit, McConnell testifies that he decided to hold off making a decision regarding Taylor's employment until September 18, 2006, the day that Bryan told Taylor to call Odom's. McConnell testifies:

> September 18, 2006 came and went[,] and I did not hear from Taylor. Bryan informed me he had not heard anything from Taylor either. I discussed the situation with Chief Operations Officer Jim Stonehocker and Vice President of Human Resources Lewis Moorer whose offices were in Madison, Tennessee about the situation regarding Taylor. As the Plant Manager it was my decision to terminate the employment of Taylor. I made this decision because he had misrepresented the reason for his personal leave and then failed to contact the facility on September as he was specifically instructed to do.

Docket entry #8, Ex. #1, ¶9.

Even assuming that Bryan's involvement in the process leading to Taylor's termination

merits decisionmaker status, his comment that "your kind does not want to work here" does not directly reflect a racially discriminatory attitude. In order to equate Bryan's comment with race discrimination, one must speculate that the phrase "your kind" refers to Taylor's race, but the phrase is ambiguous and could refer to a number of factors personal to Taylor, such as the fact that Taylor operated his own business.

Because Taylor lacks evidence that clearly points to the presence of an illegal motive for his termination, "he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Under the *McDonnell Douglas* framework, Taylor must first establish a *prima facie* case of race discrimination by showing that his termination occurred under circumstances that give rise to an inference of unlawful discrimination. *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857 (8th Cir. 2004). If Taylor establishes a *prima facie* case, Odom's must articulate a legitimate, nondiscriminatory reason for terminating him. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996). Finally, the burden is on Taylor to show that the proffered reasons are pretextual and that his race was the real reason for his termination. Odom's argues, and the Court agrees, that Taylor has failed to come forward with evidence that his termination occurred under circumstances giving rise to an inference of unlawful race discrimination. And even assuming that Bryan's "your kind" statement supports a *prima facie* case of race discrimination, Taylor has failed to show that Odom's proffered reasons for terminating his employment are merely pretext for race discrimination. To survive summary judgment, Taylor must (1) discredit the Odom's asserted reasons for firing him and (2) show

8

that the circumstances permit a reasonable inference that race was the real reason for his termination. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

The important question is whether McConnell honestly believed that Taylor had engaged in conduct meriting termination, and the undisputed facts indicate that he did. The Court finds no genuine issues for trial with respect to Taylor's claim that he was terminated based on his race.

**B.     Hostile Work Environment**

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993). To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co*., 171 F.3d 574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment.").

The sole evidence offered in support of Taylor's hostile environment claim is his testimony that Bryan told him "your kind does not want to work here." The Court finds, as a matter of law, that Taylor has failed to come forward with evidence of harassing conduct so severe that it altered the conditions of his employment. *See Singletary v. Missouri Dept. of*

9

*Corrections,* 423 F.3d 886, 893 (8th Cir. 2005) ("We have held that racial slurs alone do not render a work environment hostile as a matter of law.).

**C. FMLA**

Two types of claims exist under the FMLA: (1) "interference" claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) "retaliation" claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights. Here, Taylor alleges that he requested leave to "take care" of is father who had been ill and needed assistance doing household tasks,[4] but Odom's failed to notify him of his entitlement to FMLA leave and terminated him in retaliation for exercising his rights under the FMLA. In view of the complaint allegations, the Court finds that Taylor asserts both an interference claim and a retaliation claim.

**(1) Interference**

To prevail with an interference claim, Taylor "must show only that he . . . was entitled to the benefit denied." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006)(quoting *Russell v. N. Broadway Hosp.*, 346 F.3d 1335. 1340 (11th Cir 2003). Odom's argues that Taylor is unable to make this showing because (1) he failed to put Odom's on notice that he possibly needed FMLA leave, and (2) he is unable to show that he was entitled to FMLA leave to care for his father.

Notice. "In order to state a claim for interference under the FMLA, [Taylor] must have given notice of [his] need for FMLA leave." *Phillips v. Matthews*, 547 F.3d 905, 909 (8th Cir. 2008). "'An employee need not invoke the FMLA by name in order to put an employer on notice

---

[4]*See* Compl., ¶ 9.

10

that the Act may have relevance to the employee's absence from work.'" *Id*.(quoting *Thorson v. Gemini, Inc*., 205 F.3d 370, 381 (8th Cir.2000)). "The employer's duties arise 'when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave.'" *Id*. (quoting *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir.1999)).

Taylor's written explanations for requesting leave plainly state that he wanted time off to assist his father with family tasks, "things" his father was "unable to do around the house," and tearing down a shed. Taylor's writings state that his father was retired, but they provide no indication that he was ill or suffered from a serious health condition. Taylor claims that he told Bryan and McConnell that he needed to help his father because he was sick. In deposition, Taylor explained: "For what reason would I want to leave if my father–if he could take care of himself, what was the reason for me going does there . . . . Yes, and he was sick. If he could do it on his own, then I wouldn't have gone down there." Docket entry #8, Ex. #3, at 49. Taylor further claims that Bryan told him he could take leave under the FMLA, but Bryan "did not complete the paperwork as required and give it to Mr. Taylor." Docket entry #12 (Plf's St. Facts) ¶ 7. In light of Taylor's testimony, the Court finds genuine issues for trial as to whether Taylor put Odom's on notice that he might have been in need of FMLA leave.

Entitlement to Leave. The FMLA provides that an eligible employee is entitled to take up to twelve weeks of unpaid leave "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or

residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Here, Taylor offers no medical evidence showing that during the relevant time period, his father suffered a serious health condition as defined by the FMLA. Nor does Taylor offer evidence showing that he was needed to care for his father during the relevant time period. Department of Labor regulations discuss what it means to be "needed to care for" a family member with a serious health condition:

> The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.
>
> The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.124.

The foregoing language makes clear that the FMLA does not provide leave to cover any activity intended to assist a family member. In deposition, Taylor testified that the week of September 24, 2006, he helped his father tear out floors and repair doors "just little stuff to help . . . pick the house up again." Docket entry #8, Ex. #3 at 62-63. *See Reinholm v. American Airlines*, 2009 WL 1393742, * 4 (W.D. Wash. May 15, 2009)("Making home repairs under these circumstances is not 'care' as contemplated by the FMLA."). Additionally, Taylor testified that his mother, who lived with his father, attended to his father's basic hygienic and nutritional needs. *Id*. at 66-69. Because Taylor has failed to come forward with evidence showing that he

was entitled to leave under the FMLA, the Court finds no genuine issues for trial with respect to his interference claim.

### (2) Retaliation

In order to establish a *prima facie* case of retaliation under the FMLA, Taylor must show that (1) he exercised rights afforded under the Act, (2) he suffered an adverse employment action, and (3) a causal connection between his exercise of rights and the adverse employment action. *See Smith v. Allen Health Systems, Inc*., 833 F.3d 827, 832 (8th Cir. 2002). If Taylor makes a *prima facie* showing, the burden shifts to Odom's to provide a legitimate, nondiscriminatory reason for its challenged actions. *See Stallings v. Hussmann Corp*., 447 F.3d 1041, 1051 (8th Cir. 2006)(applying *McDonnell Douglas* burden-shifting framework to FMLA retaliation claim).

Here, Odom's contends that it fired Taylor because McConnell believed that he lied about the reason he took off work in September 2006. Furthermore, Odom's has presented evidence that Taylor admitted to a coworker that he took leave for the purpose of attending to his construction business and that the co-worker informed Taylor's supervisors about Taylor's admission and activities. Taylor provides no evidence demonstrating that Odom's explanation is unworthy of credence and has no basis in fact; nor has he provided any evidence of intentional retaliation. Accordingly, the Court finds no genuine issues for trial with respect to Taylor's retaliation claim.

### D.    Supplemental State Law Claims

Because the Court finds no issues for trial with respect to Taylor's claims over which this Court has original jurisdiction, those claims will be dismissed with prejudice, and the Court will

dismiss Taylor's supplemental breach of contract, wrongful termination, and intentional infliction of emotional distress claims, which he brings pursuant to state law, without prejudice. *See* 28 U.S.C. § 1367(c)(3).

### IV.  Conclusion

For the reasons stated, Defendant's motion for summary judgment (docket entry #7) is hereby GRANTED.  Pursuant to the judgment entered together with this order, Plaintiff's claims pursuant to 42 U.S.C. § 1981 and the Family and Medical Leave Act are DISMISSED WITH PREJUDICE, and Plaintiff's breach of contract claim pursuant to state law is DISMISSED WITHOUT PREJUDICE.  There being no issues remaining for trial, pursuant to the judgment entered together with this order, this case is dismissed in its entirety.

IT IS SO ORDERED THIS 8TH  DAY OF MARCH, 2010.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE